Mr. Nash. Thank you, your honor. May it please the court. This is a matter of claim construction under the broadest reasonable interpretation. The board improperly imposed a structural restriction on software claims that are focused on functionality. And because there's nothing in the claim language or the specification that requires that restriction, that construction is incorrect. The 923 patent relates to controlling applications at a communication terminal. That's just like controlling the apps on an iPhone. And the method claim, claim one, has three steps. Sending messages towards the network. Two, diverting a message of the messages to a controlling entity. And three, controlling in the entity, in the controlling entity, whether the application behaves in a predetermined manner. I don't remember. Have you made an argument for different treatment of claim one and claim 24? Or do they do this issue about separate components apply in your view equally to the two claims? I think there's somewhat of a distinction between the two. But I don't think that it's a meaningful distinction. I think in the context of the method claim, we have diverting without any requirement referring to any type of element, claim element. Which is unlike the third step of claim one, where we have controlling in the controlling entity. So there's a controlling entity identified in claim one, but nothing else with respect to what does the diverting. So it's unrestricted. That's true. But the problem is that claim 24 refers to separate entities. So maybe there's a difference between the method claims and the device claims. I think that there's not a difference that's meaningful with respect to how the board ended up construing these claims. And here's why. I think it refers to not different entities, but a diverting unit and a controlling entity. And it's a diverting unit configured to divert messages to a controlling entity. What's important about that, I think, is... A diverting unit and a controlling entity can be the same entity? I think that a diverting unit could be a part of a controlling entity, Your Honor. I think the word unit, in fact, implies that it could be a part of something bigger or part of something greater. That's why we have a business unit that's a part of a larger company. Or we have intensive care units that are part of a larger hospital. I think the same is true for a diverting unit. A diverting unit could just as easily be a part of a controlling entity. It could be a part of another entity. Or it could stand alone. In your description of a hospital, for example, those units have tangible aspects to them. And here we're just talking about logical processes, correct? That's correct, Your Honor. I think that that's an important distinction about... Should we apply the same logic we use for apparatus claims? Should we apply that to software claims? I think in the context of a physical apparatus claim, I think that's part of the distinction that was the problem that the Board relied on, was case law involving physical devices. I don't think that that... Like Becton? Like Becton and NTP and the Microsoft ProxyCon case. Does Becton apply to software claims? No, I don't think so, Your Honor. To the extent there is a presumption that's borne out by Becton and the cases that follow it, I don't think that that's necessarily applicable in the context of software, absent some form of restriction that you see in the claim language or in the specification that might make that distinction. What does the specification here tell us about what unit and entity mean in the claims? Well, the word unit doesn't appear in the context of the specification at all. It only appears in the claim language. The word entity appears, but only in the context of a controlling entity. So you see that they talk about a controlling entity throughout the specification and they refer to the trusted agent as one example of what could be a controlling entity. But what's important is that the specification is focused on the functionality and not really the implementation of that functionality. They teach flexibility on how to implement each of these functions. So, for example, in the context of the controlling entity, we're taught that the controlling function can be implemented through modifications to existing software, like modifications to the instructions for the DRM agent. It could also be implemented with a dedicated trusted agent, so something that's separate from the DRM agent. The same is true for the diverting functionality. We see that they teach it broadly. You have diverting functionality that can be implemented by modifying instructions in an existing protocol stack, or you can implement it with a separate middleware modification module. I think that that's important because these are simply examples of how to implement it, and I think the patentees recognize that when we're talking about software, what's important is the functionality. And a skilled programmer or a skilled software engineer recognizes that there's hundreds, thousands of ways to implement the code that implements that functionality. So I was going to give a couple examples. Can I just ask this, and I may get the wording of this question wrong. The board, as I understand or remember its opinion, adopted a notion of separate component, but I don't remember that that notion excluded separate software modules. That is, you could have separate components under the board's view met by separate software modules. If that's right, I'm not sure what the objection is as a matter of claim construction to the board's claim construction, and I think you've only presented a claim construction argument here and not an argument that under that view of separate component, there must be the prior art shows the element. Yes, Your Honor, I think I understand the question. I have two responses. First, I think it is an important aspect of claim construction because it's not just the requirement that there be a component, but that there was a negative limitation that was effectively imposed on that second step. It said that diverting could be done by anything but the controlling entity, and so I think that that's part of the problem and that's the claim construction aspect. But in terms of claim construction, at least as I remember the specification and I'm listening to your argument about functionality so that you can implement all of this in software, if the board's claim construction requires nothing more than separate software modules, and I don't mean anything technical by that, but separate instructions, then it seems to me that it's a pretty fair claim construction and it's not tied to different hardware or anything, and once it's a pretty fair claim construction, I'm not sure you've made any separate argument for disturbing the bottom line. Well, I think we did, Your Honor. I think at the blue brief, pages 43 to 48, that's where we argue that to the extent that this construction is considered to be correct, and we don't think that it is, but there's a problem with that construction because we're not able... There wasn't sufficient analysis that the board applied in comparing that construction to the arguments that we raised. So, for example, if you look at the Joint Appendix, page 11, you'll see that the board acknowledged that we actually pointed to one part of the Diavera References Isolator Engine 225 as doing the diverting, and we pointed to another part of the Diavera Isolator Engine 225 as doing the controlling. It says that at the top of the paragraph at the bottom of page 11. But then in its analysis, it concludes with one conclusory sentence that it said, Petitioner describes the different functions but does not show that the isolator engine is two separate components. It didn't provide any explanation as to why pointing to different parts of Isolator Engine 225 wasn't a sufficient demonstration of separate components, or why pointing to separate functions wasn't a demonstration of separate components. It's a very conclusory analysis, and similar to, Your Honors, the previous case and the personal web tech case from February of this year. Without sufficient analysis, this court and the parties are unable to determine whether the board's decision was arbitrary, capricious, and abuse of discretion or otherwise not in accordance with law. So we do make that argument, and I think, you know,  so even if this construction were considered correct, I think that the board didn't provide the analysis on what it meant by separate components, because we did argue that the software in Isolator Engine 225 had a portion or an aspect or a part that was doing diverting, and it also had a different portion, aspect, or part that was doing controlling. And the board acknowledged that. That's at the Joint Appendix pages 571 and 573. It also came up at the hearing in page 687 of the transcript. Well, what did the... the patent owner argue to the board was the meaning of unit and entity and separate components? What was the... How was that framed before the board? Well, leading up to the hearing, Your Honor, in the briefing, the patent owner repeatedly framed it in the terms of the ordering of steps. And there wasn't an expressed dispute that we had with the ordering of steps. So their briefing was focused on... I don't recall that they actually introduced the idea of separate components expressly. They more talked about that diverting needed to happen first and then controlling would happen second. And that because of that relationship, by pointing to Isolator Engine 225, it wasn't diverting first and then controlling, which I think is another way of saying that something can't divert to itself. But I think that that's kind of true in a common parlance. I think that controlling entities divert to themselves all the time. I know that as a parent, I'm very controlling and I divert to myself quite often. In fact, my kids are trying to get their homework in or a Christmas list to Grandma. So you just do both of those for them? Well, I reach out and I divert. I take... Sometimes I modify and I'll cross something off that list and then I'll get... In these patent cases, people love these analogies. I... Sometimes in the context of software, Your Honor, it's easier to understand in ways of analogy. But I don't think that the restrictions that you find in the case law that are dealing with physical embodiments and physical components where there's a requirement that there be separation like we see in the Becton case and in the Microsoft case and in the NTP case. I don't think that that type of presumption applies here, particularly when we're in the context of a broadest, reasonable interpretation. So, because there's nothing in the claims that would preclude the controlling entity from doing the diverting and the controlling. And there's certainly nothing in the specification that precludes the controlling entity from doing both diverting and controlling. It's important that there be separate functions but the implementation of how to do that functionality. Isn't that taking BRI a little bit too far? I don't think it is, Your Honor. I don't think in this context it is. I think that if there were some teaching... First, if there was a requirement in the claim language that required separation, I think it would be taking the BRI too far. I think if there was something in the specification that taught that it was important to the invention that there be a separation or that there... that that was the point of novelty or that there were advantages to it or that there were disadvantages to including it within the same entity, then I think that we would have a situation where perhaps the broadest, reasonable interpretation it wouldn't be reasonable. But here, there's nothing like that in either the claim language or the specification that would imply that there's anything improper or contrary to the invention. And because of that, I think just like in the Entertainer Hulu case that this court had, I know it's non-precedential but I think the rationale is applicable here because we have a situation where we've got software and we don't have any restrictions on how to implement that software and just like in that case where we weren't going to limit what the definition of a program was, I don't think that we should limit what a controlling entity can or cannot do in the context of a broadest, reasonable interpretation. Okay. You're here rebuttal time. Do you want to save it? Thank you, Your Honor. I'll reserve the remaining time for rebuttal. Mr. Murphy? Okay. Please support. This is John Murphy on behalf of PatentOwner. First, I'd like to address opposing counsel's argument that Judge Taranto that you brought up, we believe that this construction is a broad but reasonable construction.   in the context of software? I mean, we're not talking about physical items and we have this reference to unit or entity and we're not talking about physical items or entity. What does that mean in the context of software? The board actually clarified what that meant in their final decision at Appendix A and 9. The board found that the diverting step has to be performed by something other than the controlling entity. What does that mean? It can be anything, Your Honor. We're talking about software programs, right? Does that mean separate programs? What does it mean? It's very broad what it means. I think the board was trying to point out that please point to anything else other than what you're alleging to be the controlling entity. Well, they said they did. They said that in Davila different parts of the program performed the two different functions. Respectfully, Your Honor, the board never found that all the characterizations done in the prior art were done as in the characterization as petitioner argued such and such and the board came back and found we do not agree with patent owner. I'll tell you what my problem is. You know, the claim, particularly the claims 24 and so on talk about a unit, talk about an entity sounds like something physically separate and the board talked about it in the same way but that doesn't really make much sense in this context. We're talking about software and if they'd said, well, it has to be separate software programs or something like that, I could understand that but I'm not sure that I understand what the board was saying when it talked about separate components. Yeah, sure, I think that's why it's important to look at their clarification on Appendix 9, their final decision where going through the claim language as to what it means to be separate components they said anything that indicates that the diverting step is performed by something other than the controlling entity. But then I think Mr. Nash pointed to page 11 in particular the bottom   to the top of 12 where the board is I think no longer so much doing claim construction and the diverting step is performed by something other than the controlling entity. So I think it's important   as a separate    it's important to look at that as a separate component and I think it's important to look at that as a separate component but I think it's important to look at the diverting step is the intercepting step but to understand how these references work they do vague analysis as to what that means and the way Diavera works is when you turn the program on all messages are always predestined to get to the isolator engine. But the board didn't make any finding that the isolator engine didn't perform the diverting step, right? I think they did, Your Honor. Where did they do that? On Appendix A the board found that patent owner argues I'm sorry. What page? Eight. Eight? Eight. Yes, eight. Patent owner argues that petitioner does not show that Diavera discloses a separate component for the diverting limitation on the challenge claims. We agree with patent owner. But that's not the same thing as saying that the isolator engine doesn't perform the diverting step. Okay, I mean, I guess the record's unclear as to whether or not the board ever found that diverting step was or was not disclosed. Right. Seems like they took our argument. Our argument, our brief, was just please, you know, petitioner, point to anything in the prior references that you can allege is a diverting unit or anything that you can point to that performs the diverting step. And they can never point to anything. What did you argue before the board constituted a separate unit or an entity or a separate component? How did you describe that to the board? We described it as, which is kind of how I reiterated it, as please point to anything. Well, in other words, you didn't give them a definition. We provided a plain meaning interpretation of the claim language. Which was what? Sorry, what? It was, after the messages are sent from the application program, there's an intermeeting step where you have to divert a message or the messages sent from the application program to a controlling entity. And the claim language itself has distinctions in there as to the diverting step has to be to a controlling entity. And once the controlling entity gets the message, it then controls in the controlling entity. So we argued, similar to what the board found, that there has to be separate components. There has to be something that diverts a message, an intervening step, before the message is ever received by the controlling entity. Well, in other words, it sounds to me as though you presented it as though we were talking about two physically separate things. Which is a very unsophisticated way of looking at this. No? No, Your Honor. We never try to limit the structure. We said it can be anything. Please point to anything. We challenged the petitioner to do that after we laid out our plain meaning of the claims. And they were never able to point to anything in Diavera or Calder. Well, they said they pointed that the VILA had separate parts that did the diverting and did the controlling. The factual record didn't ever point to anything. They just, you know, quote-unquote said it intercepts, that's the diverting step. But as I described earlier, the intercepting actually occurs, it's a predestined thing. There's nothing in either of the references that have something inside that logical box that actually diverts it to what they allege is the controlling entity. The diverting in these things, there is no diversion. The messages are always preordained to get to what they're alleging the controlling entity is. There's no intermediary step anywhere along the way that can ever change the course of the message. And they were never able to point to anything to allege that. They relied on inherency, but then they never, they made a conclusive allegation about inherency, but they never followed up with it necessarily includes under the proper, you know, under the proper law. Then they allege obviousness, but they never allege obviousness towards this limitation. Throughout the case, they were never able to point to anything. And they never made the proper foundation either under inherency or obviousness that these were ever disclosed in the references. Just so I let off this, I do want to agree with Judge Toronto where I think this is a broad but reasonable interpretation. The Board's not trying to limit the structure of physical locations. The Board's saying, you know, the diverting unit could be, you know, they go through the different embodiments in the specification. It could be an SIP protocol stack. It could be middleware. It could be anything. It's not limited to a physical structure. What's your argument on the waiver issue? Are you still... Yes, Your Honor. We have... I'm sorry. Go ahead. I kind of have a waterfall approach on this issue. The first waiver issue we have is that the Board determined that they may express finding that they did not interpret the claims expressly. And so we believe that this is an issue of claim application rather than claim construction. Therefore, it should be reviewed under substantial evidence. The first time that appellants tried to address this issue to say that that finding by the Board was incorrect was in the reply brief. So based on those new arguments, we think that they waive this issue just as to whether or not it's claim construction issue de novo or it's claim application. The second argument we have regarding the waiver is whether or not they actually waived the argument to challenge the claim construction, assuming they get that far. And they never presented a formal claim construction. Under the only time they ever presented anything was they cited in the abstract the two cases and they said that those stand for the proposition that any claims agnostic to the claims at issue could read on the same component. And then when they actually started, they never looked at the claim language. They never looked at the specification. And they also did a claim application instead of a claim construction. They applied the plain meaning of the claim to the prior references. So we don't think, one, we think they waived their argument regarding claim construction because we made a very strong order in what the plain meaning of the claims was in our response in the underlying proceeding. They never rebutted that analysis. They never did any type of claim construction. And so at this point we think it's too late for them to first raise this issue on appeal. What do you say in response to the kind of common sense notion which I think Mr. Nash raised that at least as a matter of normal English outside the computer context you can talk about diverting something to yourself like money that doesn't belong to you? I think in the context of the claim language itself, the plain meaning, they introduced separate elements. Diverting a message to a controlling entity. And then later it says controlling the message in the controlling entity. If it was intended to be able to divert something to yourself, be within or in, but diverting to implies that there is something that's different than what you're diverting to. I think just based on grammatical interpretation, the fact that there's different elements introduced to a controlling entity, that that has to happen before it ever gets to the controlling entity. And for that, the specification is consistent with the interpretation. They introduced the fact that there are these SIP protocol stacks and that there is middleware. I guess just to pursue the point, just one more step. The same person can take two actions in sequence so that when it says the activity of diverting has to occur before the activity of controlling, at least, again, outside the context of this patent, it seems to me that does not necessarily imply that the diverter and the controller are necessarily different. Just that the activities have to proceed in sequence. I mean, agnostic of the claims, I guess you'd have a point, but if you look at the claim language, they introduce in the method step, there's a whole separate element of diverting to the controlling entity. And in 24, they introduce two different concepts. They call something a diverting unit. Its responsibility is to divert to a controlling entity. And so, on its face, you'd be rendering a lot of the claim language meaningless if you interpret those as conflating those two together. All right, Your Honor. I'm out of time, so if you'd like any other questions or else I'm going to pass the case. Okay. Thank you, Mr. Murphy. All right. Thank you. Mr. Nash, you've got about two minutes. Thank you, Your Honor. I'd like to address just a few brief points. With respect to waiver, I'm not certain what constitutes a waiver here. We've been arguing a consistent construction throughout the case. So in the context of our petition, we pointed to Isolator Engine 225 of the Diavera reference. You can see that at Joint Appendix pages 264 to 266. To the extent there was any doubt, we made that clear in the context of our reply. So you see at both pages 571 and 572 and other pages in that reply like 569, we express and state repeatedly that our understanding of the claims is one that would not preclude the controlling entity from doing both diverting and controlling. So we have an express statement, for example, at 571, the language of Claim 1 does not preclude the same structure from performing the diverting step and the controlling step. So we made that argument in our petition, then our reply. It also came up at the hearing. So, for example, at the transcript, page 687 of the Joint Appendix, you'll see that we talked about that as well. So I'm not sure what would constitute waiver there. We've been arguing for the same construction from the beginning of this case. Counsel closed by saying that the claims would be rendered meaningless. I guess under this construction, I don't think that that's true. There's certainly a separation in functions. There has to be two separate functions that are undertaken. There's diverting and then controlling. But particularly in the context of Method Claim 1, there's nothing that precludes what's doing the diverting. So that could be done by the controlling entity. And then with respect to Claim 24, there's nothing about the claim language that would be rendered meaningless by allowing the controlling entity to include a diverting unit that would be a part of the controlling entity that does the diverting. What's the difference between a controlling entity and a diverting unit? In terms of software, what's the difference between something that performs as a unit and something as an entity? I'm not sure there's anything that's reflected in the patent. It doesn't use the word entity, or it doesn't use the word unit, sorry. I think that they were trying to invoke sort of the common understanding of what a unit could be, which is that it could be something that stands alone, or it could be something that's a part of something else. So I think there was a common sense. See, I'm out of time now. Unless there's further questions. Thank you very much. Thank you.